**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN T. TAMBURO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-03169 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ELITE AUTO CREDIT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Tamburo bought a used Jaguar automobile from Defendant Elite Auto Credit, Inc. ("Elite"). When Tamburo bought the car, Elite told him that it had about 156,000 miles on it. But that number was inaccurate. When Elite bought the car at auction, the odometer indicated that it had about 156,000 kilometers (which is less than 97,000 miles). Yet the paperwork from the auctioneer and from Elite mislabeled the mileage as about 156,000 miles. Based on the overstated mileage, Elite told Tamburo that Illinois's implied warranty of merchantability did not apply to the car. When the Jaguar subsequently had serious mechanical issues, Elite refused to pay for repairs, maintaining that there was no warranty on the car. Tamburo then brought this lawsuit against Elite. His First Amended Complaint ("FAC") asserts two claims: the first claim arises under the Federal Odometer Act ("FOA"), 49 U.S.C. § 32701 *et seq.*; and the second is based on the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* Elite seeks summary judgment on both claims. (Dkt. No. 72.) As discussed below, the Court grants summary judgment in Elite's favor on Tamburo's FOA claim only. Because there is no longer any claim over which it has original jurisdiction, this Court

declines to exercise supplemental jurisdiction over Tamburo's ICFA claim and thus dismisses that claim without prejudice.

## BACKGROUND

The Court sets out the following facts as favorably to Tamburo, the nonmovant, as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

Elite is a used car dealership in the Chicago area. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRSOMF") ¶ 3, Dkt. No. 77.) In November 2017, Elite purchased a used 2008 Jaguar automobile from another dealership through the auction company Manheim Chicago of Matteson ("Manheim"). (*Id.* ¶ 4.) Manheim stated in documents that the Jaguar had an odometer reading of around 156,000 miles. (*Id.* ¶ 5; Def.'s Resp. to Pl.'s Statement of Additional Material Facts ("DRSOMF") ¶ 29, Dkt. No. 86.) But, as can be seen in photographs from the auction, the car's odometer actually read 156,029 *kilometers*, which is only about 96,952 miles. (*Id.*) Moreover, the certificate of title that Manheim provided to Elite shows that the car had 96,940 miles when the seller bought it. (DRSOMF ¶ 7.) There is no dispute, however, that nearly all vehicles that Elite buys and sells have odometers set to miles, not kilometers, so its employees normally see odometer readings in miles. (*Id.* ¶ 34.)

Tamburo bought the Jaguar from Elite's dealership in Crestwood, Illinois, in January 2018. (*Id.* ¶ 6.) He did a test drive of the car on January 20, 2018. (*Id.* ¶ 24.) Tamburo claims that he saw the check engine light come on during the test drive that day (*id.* ¶ 25), and he mentioned the light to the salesperson driving with him (*id.* ¶ 39). Tamburo further claims that the salesperson said that any issues would be fixed before he bought the car, though the salesperson denies that the conversation took place. (*Id.* ¶ 39; DRSOMF ¶ 14.) A photograph that Elite used to

2

advertise the Jaguar online appears to show the check engine light on the dashboard. (DRSOMF ¶ 1; PRSOMF, Ex. O, Dkt. No. 77-6.) The check engine light was also illuminated during the auction at which Elite bought the car. (DRSOMF ¶ 4.)

Tamburo's father placed a deposit on the car on January 20, 2018 on his son's behalf, and Tamburo closed on the sale on January 24. (PRSOMF ¶ 6.) He bought the Jaguar for $4,489.60 plus fees and taxes, for a total of about $5,266. (DRSOMF ¶ 40; PRSOMF, Ex. D, ¶¶ 64–65, Dkt. No. 77-2.) Tamburo claims that, when he closed the sale, an Elite employee told him that Elite had not fixed any issues with the car because its mechanic was out sick. (PRSOMF ¶ 39.) But that employee denies that a conversation about the car's mechanical issues ever took place. (DRSOMF ¶ 17.) The bill of sale and the odometer disclosure statement that Tamburo received both state that the car had 156,028 miles on it. (PRSOMF ¶¶ 7, 9.)

Elite claims that it derived the mileage number from the information it received from Manheim and from the website AutoCheck.com, not from the Jaguar's odometer. (*Id.* ¶¶ 10–11.) It is undisputed that no Elite employee looked at the Jaguar's odometer when filling out the sales documents. (DRSOMF ¶ 9.) According to an assistant general manager at Manheim, that company's computer system automatically lists odometer readings in miles for its cars that go to auction. (Resp. in Opp'n to Mot. for Summ. J., Ex. C, ¶ 32, Dkt. No. 77-1.) Elite based the price it charged Tamburo on examples of cars with the same make and model and similar mileage that it found on CarGuru.com. (DRSOMF ¶¶ 12–14.) A car of the same make and model as Tamburo's car with under 97,000 miles would likely have sold for more than the same car with over 156,000 miles. (*Id.* ¶ 18.)

On January 24, 2018, Tamburo signed a buyer's guide that stated the car had no warranty. (*Id.* ¶ 8.) The Elite employee who showed Tamburo the guide described it as a "waiver."

3

(DRSOMF ¶ 19.) That buyer's guide, however, was out of date and lacked information about implied warranties required by state law. (PRSOMF ¶ 8.) In addition, the guide was not displayed on the car before Tamburo bought it. (*Id.*)

Two days after Tamburo closed on the car, Tamburo's father sent a fax to Elite. (*Id.* ¶ 26.) The fax complained of issues with the windshield washer pump and the parking brake warning on the dashboard. (*Id.*) It also inquired about the large discrepancy in the car's mileage because the odometer only displayed 97,046 miles—far less than what Elite had disclosed. (*Id.*) An Elite employee called Tamburo soon afterward and assured him that he would look into the situation. (DRSOMF ¶ 34.) There is no record evidence that Elite took further action in regard to Tamburo's Jaguar, however.

Tamburo, his father, and Elite are all adamant that none of them changed the odometer from kilometers to miles. (PRSOMF, Ex. D, Sub-Ex. 3, ¶ 23, Dkt. No. 77-2; *id.*, Ex. E, ¶ 50, Dkt. No. 77-3; *id.*, Ex. I, ¶ 24, Dkt. No. 77-5.) Tamburo's father remembers an Elite employee stating at the closing that the odometer was rolled back, thus explaining the discrepancy, but Tamburo does not remember that conversation. (Ex. E ¶ 26; Ex. I ¶ 20.) An inspection for which Tamburo later paid showed that the odometer had not been tampered with in any way. (Ex. E ¶ 47.)

On February 9, 2018, Tamburo brought the car into a repair shop, Lars Worldwide. (PRSOMF ¶ 27.) The mechanic repaired the windshield washer pump and the engine's thermostat, which cost Tamburo $664.66. (DRSOMF ¶ 36.) Tamburo brought the Jaguar back to that repair shop on March 19, 2018. (*Id.* ¶ 37.) The mechanic replaced the electronic control unit ("ECU") for $673.46. (*Id.*) Nonetheless, the check engine light came on again later that day. (*Id.*) Tamburo returned to the dealership for additional repairs on several other occasions over the next year. (*Id.*) His total repair costs from February 9, 2018 forward were about $4,311.55. (*Id.*) In addition,

4

Tamburo has introduced into the record some evidence that there are air pockets in the coolant system, which has the potential to cause severe engine problems. (PRSOMF, Ex. B, ¶¶ 35–36, Dkt. No. 77-1.)

On April 18, 2018, Tamburo contacted Elite by fax to demand that—pursuant to Illinois's implied warranty for vehicles with less than 150,000 miles—Elite cover the repair costs for the thermostat and the ECU. (PRSOMF ¶ 28.) Elite sent a brief response on May 14, 2018, stating that the odometer read 156,028 miles at the time of sale. (DRSOMF ¶ 38.)

Tamburo has pointed to two other lawsuits in which Elite allegedly misled consumers or business partners, but neither involve the same issues as this case. (DRSOMF ¶¶ 23–25.)

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To do so, the movant must identify relevant portions of the record that demonstrate the lack of any genuine material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On the other hand, to defeat a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there is such an issue, the Court must view all evidence in the light most favorable to the nonmovant. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). But the genuineness of a factual dispute suffices to defeat a motion for summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248). The "mere existence of

*some* alleged factual dispute" is not enough to defeat a summary judgment motion. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quoting *Lawrence*, 391 F.3d at 842).

      **I.**      **Count I—Federal Odometer Act**

Tamburo's first claim arises under the FOA. That statute requires a person transferring ownership of a motor vehicle to provide the transferee with a written "[d]isclosure of the cumulative mileage registered on the odometer." 49 U.S.C. § 32705(a)(1)(A). The FOA creates a civil cause of action against any person who violates that provision "with intent to defraud." *Id.* § 32710(a). To prevail on a claim of odometer fraud, a plaintiff "must demonstrate two essential elements: (1) a violation of the Act's odometer disclosure requirements (*i.e.*, the providing of an inaccurate odometer reading), and (2) an intent to defraud." *Diersen v. Chi. Car Exch.*, 110 F.3d 481, 487 (7th Cir. 1997). To be liable under the FOA, the defendant must have been engaged in "misconduct more invidious than mere negligence." *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 807 (7th Cir. 1988). In this case, it is undisputed that the odometer statement—which stated that the Jaguar had 156,028 miles—was inaccurate, so the only issue is Elite's intent to defraud. If there are no genuine issues of material fact, the Court may resolve the question of intent to defraud at the summary judgment stage. *See Diersen*, 110 F.3d at 487.

As an initial matter, Elite argues that it is legally impossible for a seller to intend to defraud by overstating—rather than understating—a car's mileage. Elite cites no case law to support that proposition, however, and this Court declines to adopt that approach. Indeed, a dealer may use an odometer statement to defraud a customer in several ways. The most common way is to understate the car's mileage in order to demand a higher purchase price from the customer. But when state law requires a dealer to provide an implied warranty for cars with less than 150,000 miles, a dealer could defraud a customer by overstating the car's mileage and thus depriving the

6

customer of the benefits of the warranty. In some circumstances, the lower sales price the dealer would receive would be worthwhile to avoid paying for repairs for a car under warranty. Liability in that circumstance would comport with the text of the FOA. The statute does not, after all, ban overstating the mileage; instead, it requires "[d]isclosure of the cumulative mileage," suggesting that liability for understating mileage is possible. 49 U.S.C. § 32705(a)(1)(A). In short, the Court sees no reason why Tamburo cannot recover if he proves that Elite acted with an intent to defraud him by understating the Jaguar's mileage in order to avoid the Illinois statutory warranty for cars with less than 150,000 miles.

     Nevertheless, the Court concludes that there is no genuine issue of material fact on the question of Elite's intent. Tamburo has not pointed to any evidence that Elite was aware that the car's true mileage was under 97,000 miles. To the contrary, all the evidence in the record indicates that Elite received an incorrect mileage number from Manheim and then Elite employees copied that incorrect number without verifying it against the odometer in the car. It might have been better practice for Elite to check the actual odometer in addition to the paperwork from the auction, and it might even have been negligent in failing to do so. But mere negligence is not sufficient to establish an intent to defraud. *See Diersen*, 110 F.2d at 487; *Jones*, 848 F.2d at 807. There is no evidence in the record that any Elite employee looked at the Jaguar's odometer, much less that any Elite employee knew that the odometer was actually recording kilometers instead of miles.

     Beyond arguing that Elite should have known the odometer's true reading, Tamburo's contends that Elite has a credibility issue that precludes entry of summary judgment in its favor. Tamburo focuses on two photographs from the Manheim auction that Elite produced in discovery. Both photographs show the Jaguar's dashboard during the auction. One is enlarged so that only

7

the odometer is visible. The other is not enlarged, but there is a yellow circle drawn around the odometer that covers up the illuminated check engine light. Drawing that yellow circle on the photograph was perhaps inadvisable, but it does not create a credibility issue that precludes summary judgment in Elite's favor. When Elite produced the photographs during discovery, the original complaint was still the operative complaint. (DRSOMF ¶ 2.) Both counts of that complaint concerned the incorrect odometer disclosure, not the check engine light. In altering the photograph, Elite may simply have been emphasizing the odometer, not hiding the check engine light. Moreover, the production by Elite's attorneys of a photograph with a problematic edit does not call into question the statements of all the different Elite employees and former employees who testified.

The Court therefore grants Elite's motion for summary judgment on the FOA claim.

## II. Count II—Illinois Consumer Fraud and Deceptive Business Practices Act

Tamburo's second claim is a state-law claim under the ICFA. The parties focus their briefing on 815 ILCS 505/2L, a section of the ICFA that exclusively concerns the sale of used automobiles. That section requires dealers to provide implied warranty of merchantability for the first 15 days or 500 miles, whichever comes first, for cars sold with 150,000 miles or less. 815 ILCS 505/2L(c). The warranty "is met if a used motor vehicle functions for the purpose of ordinary transportation on the public highway and substantially free of a defect in a power train component." 815 ILCS 505/2L(d). Tamburo contends that the repairs he had to make to the Jaguar were covered by the implied warranty. But in his FAC, Tamburo also cites 815 ILCS 505/2, which forbids "[u]nfair methods of competition and unfair or deceptive acts or practices" in the conduct of trade or commerce. As examples of unfair or deceptive practices, Tamburo points to, among other things, Elite telling him that the car had no warranties, Elite's use of an outdated

8

buyer's guide, Elite's failure to display a current buyer's guide in the car's window, and Elite's failure to repair mechanical defects Tamburo discovered.

It is undisputed that both parties in this case are citizens of Illinois for purposes of determining diversity jurisdiction, so the Court does not have original jurisdiction over this state-law claim. *See* 28 U.S.C. § 1332(a). To this point, the Court has exercised supplemental jurisdiction over the ICFA claim because it had original jurisdiction over the FOA claim, which arose under federal law. *See id.* §§ 1331, 1367(a). The Court may continue to exercise supplemental jurisdiction over the ICFA claim even after granting summary judgment in Elite's favor on the FOA claim. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). But the supplemental-jurisdiction statute also allows the Court to decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In this case, the Court concludes that it is appropriate to do so.

The Seventh Circuit has explained that the "general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis*, 534 F.3d at 654 (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). There are, however, exceptions to this "rule of thumb" when (1) the statute of limitations has run on the state-law claim, (2) substantial judicial resources have already been committed to the state-law claim in federal court, or (3) when it is absolutely clear how the state-law claim should be decided. *See id.* None of those exceptions apply in this case.

First, the statute of limitations has not run on the state-law claim. The ICFA contains a three-year statute of limitations for claims for actual damages. 815 ILCS 505/10a(e). Tamburo filed his original complaint on May 3, 2018—just over three months after he bought the Jaguar

9

from Elite. The supplemental-jurisdiction statute provides that the statute of limitations for any pendent claims "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d).[1] The limitations period therefore stopped running when Tamburo filed his original complaint in this Court, and very little of the period has elapsed. *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018). The clock will only restart when the Court dismisses this claim, so Tamburo will have the full remainder of limitations period, plus an additional 30 days, in which to refile the ICFA clam in state court.

Second, the Court has not invested substantial judicial resources into the ICFA claim. For this factor, the Seventh Circuit has emphasized that what matters most is the resources the Court has devoted to addressing the merits of the state-law claim. *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 480 (7th Cir. 2012). This summary judgment motion is the first ruling from the Court addressing the merits of the state-law claim. The Court has held no hearings on the merits and, aside from the motions addressed in this Memorandum Opinion and Order, the motions in this case have been routine. The Court's investment of resources in the ICFA claim has not been significant.

Third, the resolution of the claim is not absolutely clear. To address the ICFA claim under 815 ILCS 505/2L, the Court would have to resolve whether Elite violated the warranty. To make

---

[1] In this case, state law does not provide for a longer tolling period. Illinois law provides that when a federal district court dismisses a claim for lack of jurisdiction, the plaintiff has the greater of one year or the remainder of the limitations period to refile the claim in Illinois state court. *See* 735 ILCS 5/13-217. That statute would apply in this circumstance because Illinois courts consider a decision not to exercise supplemental jurisdiction to be a dismissal for lack of jurisdiction. *See, e.g.*, *Timberlake v. Illini Hosp.*, 676 N.E.2d 634, 637 (Ill. App. Ct. 1997). But § 1367(d) provides a longer tolling period in this case because, for the purposes of that statute, the limitations clock stopped running on the day Tamburo filed his complaint in this Court. State law does not appear to stop the clock in that manner, so it would only give Tamburo the greater of one year or the remainder of the limitations period that has been running since 2018.

that determination, the Court would have to address whether the car was fit for transportation on a public highway and whether the engine thermostat and the electronic control unit are power train components. The parties have cited no cases that address those issues. And among the small number of reported Illinois cases concerning the statute, the Court has found none on point. In addition, the parties have raised issues about tolling of the warranty period and whether Tamburo gave Elite adequate notice about defects in the car. Thus, the disposition of this claim is not clear and it concerns novel questions of state law that are best addressed in Illinois state courts in the first instance.[2]

The Court therefore declines to exercise supplemental jurisdiction over the ICFA claim and dismisses that claim without prejudice to Tamburo refiling it in state court.

### III. Tamburo's Motion to Strike Portions of Elite's Reply Brief

Finally, Tamburo has moved to strike portions of Elite's reply brief in support of its amended motion for summary judgment and its Local Rule 56.1 statement of material facts. Specifically, Tamburo complains about paragraphs in Elite's filings that reference other lawsuits that Tamburo and his father have brought, his father's alleged knowledge of the Federal Rules of Evidence, and Tamburo's counsel's representation of Tamburo's father in other suits. Notably, the Court previously struck nearly identical language from Elite's Answer to the FAC. (*See* Dkt. No. 67.)

In addition to the express provisions of Federal Rule of Civil Procedure 12(f), which govern striking material from "pleadings," the Court possesses a degree of intrinsic authority to strike immaterial, impertinent, scandalous, or other inappropriate material from other filings, such

---

[2] To the extent Tamburo's ICFA claim relies on 815 ILCS 505/2, it presents state-law issues that are not as novel or complex as those raised by 815 ILCS 505/2L. But Tamburo presented his ICFA claim as single count in his FAC, and the 505/2 claim and the 505/2L claim rely on a closely related set of facts. If it is appropriate to dismiss the 505/2L claim, it is also appropriate to dismiss the 505/2 claim.

11

as briefs and statements of material facts in connection with summary judgment. *See, e.g.*, *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 617 (7th Cir. 2001); *Cleveland v. Porca Co.*, 38 F.3d 289, 298 (7th Cir. 1994). Elite, here, seeks to circumvent the Court's prior ruling striking inappropriate information from its Answer by raising the same information in its summary judgment briefing. But the information is no more pertinent now than it was when raised in Elite's Answer to the FAC. The list of cases is immaterial to the merits of this case, and moreover, it is prejudicial because it is meant to cast aspersions on Tamburo's motives, credibility, and character. The other issues Tamburo has identified—his father's knowledge of procedure and his lawyer's involvement in other cases—are closely related to the main issue similarly impertinent. Therefore, the Court strikes the material Tamburo has identified from pages seven through eight of Elite's reply brief and paragraphs 28 and 35 of Elite's Local Rule 56.1 statement. That information played no role in the Court's decision to grant summary judgment.

## CONCLUSION

For the reasons discussed above, the Court grants Elite's summary judgment motion (Dkt. No. 72) with respect to Count I only. Having resolved the only claim over which the Court has original jurisdiction, the Court declines to exercise jurisdiction over Tamburo's state-law claim and thus dismisses Count II without prejudice. The Court also grants Tamburo's motion to strike (Dkt. No. 88) with respect to the specified portions of pages seven through eight of Elite's reply brief and paragraphs 28 and 35 of Elite's Local Rule 56.1 statement.

ENTERED:

Dated: May 27, 2020

_____
Andrea R. Wood
United States District Judge